GAULT *v.* GAULT.

1. Landlord and Tenant—Tenancy from Year to Year—Statute of Frauds.

By letting into possession tenants who agreed to execute a written lease for three years, and who, after obtaining possession, refused to surrender the premises; and by afterwards notifying them that they might remain for a year, if they paid rent in accordance with their agreement, the landlord gave them no right to remain more than the year.

2. Same—Effect of Notice.

Acceptance of rent after the expiration of the year, although ineffective proceedings for dispossession were pending, and a subsequent notice to quit or to pay rent due, while inconsistent with the theory that the tenancy had been terminated, did not create a tenancy at will, terminable by a three months' notice to quit, or a tenancy from year to year.

3. Same—Termination—Lease.

At the end of the second year of occupancy, the landlord had the right to terminate the tenancy without notice, and repossess himself of the premises, and did not, by delaying nearly a month, estop himself from proceeding to oust the occupants, in the absence of evidence of his express or implied consent to the continued possession.

Error to Wayne; Donovan, J. Submitted April 13, 1910. (Docket No. 83.) Decided July 14, 1910.

Summary proceedings by James Gault and another against Frank Gault and another for the possession of certain real estate. A judgment for complainants is reviewed by defendants on writ of error. Affirmed.

*Ari E. Woodruff* and *Frank W. Atkinson*, for appellants.

*James H. Pound*, for appellees.

OSTRANDER, J. There were negotiations between the parties for a lease of $77\frac{1}{2}$ acres of land for a term beginning April 1, 1907, and ending April 1, 1910, at a rental of $3 per acre per annum, payable $6.25 each month and the balance at the end of the year. It was agreed that a written lease, with these terms, should be executed. Defendants were at the time in possession. Plaintiffs and defendants each prepared a form of lease. The one prepared by defendants permitted them, at their option, to remain five years, and contained a provision that the landlord was to make certain repairs. No lease was executed. Plaintiff James Gault took away the form of lease which he had submitted and had left with defendants, saying, in substance, that defendants were on the farm without right. A notice to defendants, or to one of them, was served on August 25, 1907, stating that defendants were required to vacate the premises on April 1, 1908, to put in no fall crops, with the further statement that the extension of time to April 1, 1908, was made upon the express condition that the rent due should be paid, and that defendants "comply with all the terms of the agreement under which you rented said farm and personal property." Another notice was given in September, 1907, requiring defendants to quit and surrender possession of the premises "or pay us the rent now due for said premises." In September, 1907, a suit in chancery was

begun by plaintiffs, and from the decree entered in the cause an appeal was taken to this court, where the decree was reversed and the bill dismissed. *Gault* v. *Gault*, 158 Mich. 303 (122 N. W. 639). A notice to quit or pay rent was served June 6, 1908, proceedings pursuant thereto were begun before a circuit court commissioner to recover possession, and were ended by the payment of $243.50 on June 24, 1908, for which money plaintiff receipted as for rent to June 1, 1908. Thereafter rent at the rate of $6.25 per month was paid to February 1, 1909. No rent has since been paid.

The present proceeding was begun in April, 1909, without the serving of any other written notice, the complaint setting out, generally, that plaintiffs are landlords of the said premises and defendants tenants under them, who hold the premises unlawfully and against the rights of complainants. The commissioner on May 11, 1909, rendered a judgment of restitution. It does not appear from his return that he found any rent to be due or that he found the complainants entitled to the possession on account of the nonpayment of rent. In the affidavits for leave to appeal is to be found the statement that the commissioner entered a judgment against defendants for $162.25 rent, and a like statement is incorporated in the motion for leave to appeal. In the circuit court the jury was instructed to return a verdict of guilty, or not guilty, as they found certain facts to be. The judgment of the circuit court is one for restitution of the premises. We assume, therefore, that the proceeding was brought, not because rent was due and unpaid, but upon the theory that the tenancy, whatever its nature, had been determined, for which reason defendants were unlawfully in possession.

Appellants argue two propositions, stated in the brief as follows:

"*First.* That the circuit judge should have directed a verdict for the defendants for the reason that, under the agreement entered into between the parties, a tenancy

from year to year was created, which tenancy was not terminated by the statutory notice of one year.

" *Second.* That if there was a question of fact to be submitted to the jury, the conduct of the trial judge during the trial was such that defendants were deprived of a fair and impartial trial."

1. It was a part of the agreement of the parties that a written lease was to be executed. This appears both by the testimony given in the case at bar, and by the pleadings in the chancery suit which has been referred to. It therefore is not the case of leasing land, by parol, for a period longer than a year. It is the case of a parol agreement to make a written lease for a term which could not be created by parol. The parties contemplated no such thing as an arrangement out of which would arise what is known to the law as a tenancy from year to year. Of the legal effect of letting defendants into possession under the circumstances stated, two things may be said. One is, that, upon the refusal of the defendants, if they did refuse, to execute a lease as agreed, the landlord might have immediately repossessed the premises. It would be a singular rule of right, and therefore a singular rule of law, which would permit defendants to build any right of continued occupancy upon their refusal to execute the contract agreed upon, to create a relation different from the one agreed to be created. And, whoever is responsible for the nonexecution of the lease, it is clear that defendants are not holding under any agreement, whether enforceable or not, for a term. The other is, that, the landlord, without taking proceedings to dispossess them or to compel them to execute the lease agreed upon, notified them they might remain in possession for the period of one year, provided they paid rent, etc., in accordance with the oral agreement. It cannot be said there was a contract for leasing for a year. There was possession by the tenants and acquiescence therein by the landlord, upon terms mutually understood.

If it can be said that the landlord was by his action

precluded from terminating the tenancy during the year, it gave defendants no right to remain longer than a year. The landlord, at the expiration of the year, took no action to dispossess defendants except by proceedings in which restitution could not be awarded if defendants paid the rent found to be due. Defendants paid and he accepted the rent due for the first year and thereafter to February, 1909. After the first notice, he gave no other written notice except such as demanded possession or rent, in the alternative. This conduct is inconsistent with the theory that the tenancy had been terminated by any notice, oral or written. It is consistent with the theory that defendants were holding over, by acquiescence of the landlord, after the first year. What, then, was the nature of the tenancy? Unless the facts distinguish this case from *Huyser* v. *Chase*, 13 Mich. 98, it was a tenancy at will, determinable by a three months' notice to quit. See, also, *Schneider* v. *Lord*, 62 Mich. 141, 142 (28 N. W. 773). The facts do distinguish the cases. There the premises were a house and lot on Woodward avenue, in Detroit; here a farm. In that case, it is true, an annual rent was reserved, but it was payable in equal monthly installments. Here an annual rent is reserved, but the greater part of it is payable at the end of the year. What the parties did during the first year, considered with what they had agreed the rent should be, was equivalent to a verbal stipulation for rent at an annual rate, payable, the most of it, at the termination of an annual period. The reasonable presumption is, in such a case, that if the tenant is permitted to hold over, he holds for the annual period. We are of opinion that the tenancy was not strictly a tenancy at will. Nor was it a tenancy from year to year. There was never a lease, parol or other, for a term of years. The rights of the parties rested upon conduct of the parties after the neglect or refusal to execute the written lease. The most that defendants can claim is that, if they held over after the expiration of an annual period, they were in for another annual period. They were liable

to be dispossessed at the end of any year, without notice.

Plaintiffs expressly permitted defendants to occupy for one year. They acquiesced, as we have seen, in the occupancy for the second year. The third year began April 1, 1909, and on the 30th day of that month complaint was made. Ought the elapsing of this time to be held to entitle defendants to remain in possession for the period from April 1, 1909, to April 1, 1910? As we have seen, the question must be decided without reference to the original agreement for a term of three years. There was no consent of the landlord, express or implied, for continued occupancy, unless consent may be implied from the lapse of time. Often mere lapse of time may estop the landlord, as well as the tenant, to deny the further relation of landlord and tenant. In some cases, it may be a question of fact for the determination of a jury. In this case no one claims that plaintiffs consented, in fact, or could be induced to consent, to allow the defendants to remain any longer on the land. There was much feeling between the parties. In the chancery suit it had been determined and decreed in the court below that defendants' rights expired March 31, 1909. It is the testimony of one of the defendants that in April, 1909, he "was thrown off the farm." We are of opinion that the undisputed evidence negatives consent, and that the court below should have directed a verdict of guilty to be returned. Being of this opinion, it is unnecessary to consider the second proposition of the appellants.

The judgment is affirmed.

HOOKER, MOORE, McALVAY, and BLAIR, JJ., concurred.